UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| ROBERT MAY, as Administrator for the Estate of Thomas May, CHRISTOPHER HALL, as Administrator for the Estate of Bradley Hall, and BEN MATTHEW COOLEY, | ) ) ) ) ) ) | Civil No. 09-165-GFVT |
| Plaintiffs, | ) ) | |
| V. | ) ) ) | **MEMORANDUM OPINION & ORDER** |
| FORD MOTOR COMPANY, | ) ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendant Ford Motor Company's three motions for partial summary judgment. For the reasons set forth below, Ford's Motion for Partial Summary Judgment on Plaintiffs' ESC Claims [R. 60] and Motion for Partial Summary Judgment on Plaintiff's Claim for Damages for Conscious Pain and Suffering [R. 62] are granted. The parties should be prepared to argue and discuss Ford's Motion for Partial Summary Judgment on Plaintiffs' Punitive Damages Claims [R. 63] at the Final Pretrial Conference currently scheduled for January 10, 2011.

**I.**

This action arises out of a motor vehicle accident that occurred on November 9, 2008, in Rockcastle County, Kentucky. [R. 1; *See also* 09-CV-182-GFVT, R. 1.[1]] On that date, Thomas May was driving a 2001 Ford Taurus northbound on Interstate Highway 75. [R. 1.] Bradley Hall and Plaintiff Ben Matthew Cooley were passengers in the Taurus. [R. 1; 09-182, R. 1.] The three young men were college students returning from a UK Baptist Campus Ministries Fall Retreat at Laurel Lake. [R. 65 at 1.]

May lost control of the vehicle, and it entered the median. [R. 62, Attach. 3 at 30.] The vehicle hit the bottom of the median, causing it to flip over. [*Id.* at 30-31.] The Taurus landed on its tires in the southbound lanes, perpendicular to traffic, where it was struck by an on-coming tractor trailer. [*Id.* at 31; R. 1.] All three of the Taurus's occupants sustained injuries as a result of the crash, and those injuries were fatal to May and Hall. [R. 1; 09-182, R. 1.]

The Plaintiffs allege that the Taurus was in a defective condition unreasonably dangerous to users, thereby causing the accident and their injuries. [R. 1; 09-182, R. 1.] Specifically, they allege that Ford negligently designed, manufactured, marketed, and distributed the Taurus, and that Ford's negligence included a failure to warn of the known and foreseeable hazards of the Taurus, both before and after the sale of the subject vehicle. [R. 1; 09-182, R. 1.] The Plaintiffs further allege that Ford is strictly liable as the designer manufacturer, marketer, and seller of the Taurus. [R. 1; 09-182, R. 1.] The Plaintiffs seek damages for physical pain and suffering and

---

[1] Plaintiff Ben Matthew Cooley initially filed a separate lawsuit against Ford, identified as Case No. 09-CV-182-GFVT. Cooley's case was consolidated with the instant action, 09-CV-165, on November 2, 2009. [R. 13.] The 09-165 action became the lead case, and it is the case to which all citations to the record refer unless otherwise noted.

punitive damages, among other forms of relief. [R. 1; 09-182, R. 1.]

## II.

### A.

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In reviewing a motion for summary judgment, the court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Browning v. Dept. of Army*, 436 F.3d 692, 695 (6th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 495 U.S. 574, 587 (1986)). The Court has no duty, however, "to search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001) (citation omitted).

### B.

#### 1.

Ford argues that it is entitled to summary judgment on the Plaintiffs' Electronic Stability Control ("ESC") system claims. [R. 60.] According to Ford, the "Plaintiffs have continued to

3

refine their theories of liability throughout the discovery process, and have recently argued as a basis for recovery, that the subject Taurus was unreasonably dangerous or defectively designed for failing to have an ESC system installed." [R. 61 at 3.] Ford contends that the Plaintiffs lack sufficient evidence to support this claim. The Court agrees.

In Kentucky, "the standard for imposing liability upon manufacturers or sellers of products is whether the product is 'in a defective condition unreasonably dangerous to the user or consumer.'" *Morales v. American Honda Motor Co., Inc.*, 151 F.3d 500, 506 (6th Cir. 1998) (quoting *Montgomery Elevator Co. v. McCullough*, 676 S.W.2d 776, 780 (Ky. 1984)). Thus, a plaintiff in a Kentucky products liability action must show an identifiable, unreasonably dangerous defect. *See Gray v. General Motors Corp.*, 133 F. Supp. 2d 530, 533 (E.D. Ky. 2001), *aff'd*, 312 F.3d 240 (6th Cir. 2002). Additionally, a plaintiff must show that the defect "probably caused the accident."[2] *Id.* (citing *Midwestern V.W. Corp. v. Ringley*, 503 S.W.2d 745 (Ky. 1973). *See also Stewart v. General Motors Corp.*, 222 F. Supp. 2d 845, 848 (W.D. Ky. 2002), *aff'd*, 102 Fed Appx. 961 (6th Cir. 2004).

The Kentucky Supreme Court has held "that for a proper understanding of that which requires scientific or specialized knowledge and which cannot be determined intelligently from testimony on the basis of ordinary knowledge gained in the ordinary affairs of life, expert testimony is needed." *Commonwealth, Dept. of Highways v. Robbins*, 421 S.W.2d 820, 824 (Ky. 1967). Further, "expert witnesses are generally necessary, indeed essential, in products liability

---

[2]"In cases of defective design, the difference between strict liability and negligence 'is of no practical significance so far as the standard of conduct required of the defendant is concerned. In either event the standard required is reasonable care.'" *Estate of Bigham v. DaimlerChrysler Corp.*, 462 F. Supp. 2d 766, 771 (E.D. Ky. 2006) (quoting *Jones v. Hutchinson Mfg., Inc.*, 502 S.W.2d 66, 69-70 (Ky. 1973).

cases . . . to prove such matters as a product defect and proximate causation . . . ." *Thomas v. Manchester Tank & Equipment Corp.*, 2005 WL 3673118, at *1 (W.D. Ky. May 13, 2005) (quoting William S. Haynes, *Kentucky Jurisprudence: Torts* § 21-18 (1987)); *see also Stevens v. Keller Ladders*, 1 Fed. Appx. 452, 458 (6th Cir. Jan. 12, 2001). Here, whether the 2001 Ford Taurus is or was defectively designed due to its lack of an ESC system is not a matter within the general knowledge of ordinary persons. *See Manchester Tank*, 2005 WL 3673118, at *1. Accordingly, expert testimony is needed on the subject.

The Plaintiffs have produced the reports of two expert witnesses. In his report, expert witness Douglas B. Chisolm concludes that the design of the 2001 Ford Taurus rear coil spring was defective, making it susceptible to corrosion fatigue failures. [R. 66, Attach. 5.] Expert witness David A. Renfroe concludes that May lost control of the vehicle as the result of a right rear coil spring fracture. [R. 66, Attach. 8 at 14.] Renfroe also opines that "ESC would have acted to increase the driver's ability to control the vehicle in this accident." [*Id.*] At his deposition, however, Renfroe stated that, "[b]ut for the springs breaking, I don't necessarily think that not having ESC in this case is a defective characteristic." [R. 61, Attach. 1 at 149.[3]] Renfroe further stated that failure to install an ESC system on the vehicle is a defect only if Ford had knowledge about the problem with the rear coil springs. [*Id.* at 150-51.]

Thus, the Plaintiffs have expert testimony suggesting that the 2001 Taurus's rear coil springs were defective and caused the accident. The Plaintiffs, however, have no expert testimony suggesting that lack of an ESC system, by itself, constitutes a defect. Further, the

---

[3]Page numbers correspond with the page numbers on the attached document, not the page numbers imposed by cm/ecf.

5

Plaintiffs have no expert testimony suggesting that the Taurus's lack of an ESC system caused the accident at issue–only that it would have acted to increase May's ability to control the vehicle in the accident. Accordingly, the Plaintiffs cannot establish a typical products liability claim grounded on Ford's failure to install an ESC system on the 2001 Taurus.

The Plaintiffs do have expert testimony suggesting that an ESC system could have minimized, or perhaps even prevented, the injuries suffered by the Plaintiffs as the result of the fractured coil spring. In this way, the Plaintiffs' ESC claim is akin to a specific subset of products liability claims: crashworthiness claims. Under Kentucky law, "[i]n a crashworthiness or enhanced injury case, the plaintiff claims not that a defect in a motor vehicle caused a collision, but that a defect in the vehicle caused injuries over and above those which would have been expected in the collision absent the defect." *Toyota Motor Corp. v. Gregory*, 136 S.W.3d 35, 41 (Ky. 2004). *See also Gray*, 133 F. Supp. 2d at 534 (The plaintiff "argue[d] not that a defect caused the accident but that a defect caused enhanced injuries."); *Estate of Bigham*, 462 F. Supp. 2d at 772 ("[T]he crux of these . . . cases is determining whether the design of a vehicle was defective in its alleged inability to withstand an accident and prevent injuries that would not have otherwise occurred."). A crashworthiness "claim, in essence, is that the design of the vehicle failed to reasonably protect the occupant in a collision." *Toyota Motor Corp.*, 136 S.W.3d at 41.

There are three elements a plaintiff must demonstrate in order to establish a *prima facie* case in a crashworthiness action: "(1) an alternative safer design, practical under the circumstances; (2) proof of what injuries, if any, would have resulted had the alternative, safer design been used; and (3) some method of establishing the extent of enhanced injuries

attributable to the defective design." *Id.* Here, the Plaintiffs have presented no evidence in support of the second and third elements.[4]

Renfroe's opinion with respect to the ESC system is confined to two short paragraphs at the end of his report. The first paragraph[5] reads as follows:

> Electronic Stability Control is advancement in vehicle safety that has been in existence for a number of years now. These computerized systems attempt to assist the driver in maintaining control of his or her vehicle by monitoring the desired direction of travel and comparing that to the current vehicle motion. These systems automatically apply braking forces to the different wheels of the vehicle in an attempt to slow un-desired yaw and loss of control of the vehicle. In this instance, the cause of the accident is solely that Mr. May was unable to maintain control of his Ford Taurus after the suspension system was compromised. A properly design[ed] and implemented ESC most likely would have detected this loss of control and engaged to assist Mr. May during the loss of control phase of the accident.

[R. 66, Attach. 8 at 13.] It appears that Renfroe performed no tests in reaching this opinion. Nor is there any evidence in the record suggesting that any other expert witness performed such tests. Further, Renfroe does not set forth any data or statistics on which his opinion could be based. In short, the Plaintiffs have no proof of what injuries would have resulted had an ESC system been installed, and they have no method of establishing the extent of enhanced injuries attributable to the lack of ESC. *See Estate of Bigham*, 462 F. Supp. 2d at 777 (noting "an apparent absence of any research surrounding alternative injuries" in the case). They have only Renfroe's speculation

---

[4] The Court assumes that the alternative design would include installation of an ESC system.

[5] The second paragraph notes that Ford "produce[d] vehicles prior to and including the 2001 model year that were equipped with" ESC, thus establishing that ESC technology was available when the 2001 Taurus was manufactured. [R. 66, Attach. 8 at 13-14.]

that an ESC system would have assisted May in maintaining control of the Taurus.⁶ Such evidence is insufficient to establish a *prima facie* crashworthiness claim. Accordingly, Ford is entitled to judgment as a matter of law.

**2.**

Ford also argues that it is entitled to summary judgment on Plaintiff Christopher Hall's claim for damages for physical pain and suffering sustained by Bradley Hall prior to his death. Specifically, Ford argues that because the collision rendered Bradley Hall unconscious and he remained unconscious until his death, such damages are not recoverable. The Court agrees.

Under Kentucky law, pain and suffering is not a proper element of damages for a person who remains unconscious from the time of injury to the time of death. *Vitale v. Henchey*, 24 S.W.3d 651, 659 (Ky. 2000). Such damages "may be awarded, however, if the injured person was partly conscious, had intervals of consciousness, or was conscious for a short time before death." *Id.* (citation and internal quotation marks omitted). In *Vitale*, for example, there was evidence that the decedent, Sallee, "was treated for pain, observed to be in pain, moved her extremities and flinched her eyes in response to her name" after the incident alleged to cause her injury and before her death. *Id.* The *Vitale* court held that "this evidence was sufficient to support a finding that Sallee endured conscious pain and suffering," making it an issue for the jury. *Id.*

Here, in contrast, there is simply no evidence from which a reasonable jury could find that Bradley Hall was conscious after the accident and before his death. At his deposition,

---

⁶At his deposition, Renfroe stated more strongly that it his opinion that the accident would not have happened had ESC been installed on the 2001 Taurus. [R. 61, Attach. 1 at 150.] Again, however, he does not set forth any tests or data on which that opinion relies.

witness David Crum testified that he reached the Taurus "[p]robably less than a minute" and "at most a minute and a half" after its collision with the tractor trailer. [R. 73, Attach. 2 at 8.] Crum, who has been trained as a first responder in both Virginia and Tennessee, stated that he saw no movement or other signs of consciousness from the front passenger, Hall. [*Id.* at 10.] Crum further stated that he asked another individual who arrived on the scene, a trauma nurse from Michigan, to check Hall, and she agreed with him that Hall was deceased at that time. [*Id.* at 9-10, 12.] Additionally, witness Charles T. Hogg, Jr., testified that he reached the Taurus "[l]ess than a minute" after the accident. [R. 62, Attach. 4 at 24-25.] According to Hogg, the front side passenger of the Taurus, Hall, was unconscious at that time and never regained consciousness in his presence. [*Id.* at 24.]

Plaintiff and passenger Ben Matthew Cooley also gave deposition testimony regarding his memory of the accident. Cooley testified that Bradley Hall "was very quiet" during the accident. [R. 62, Attach. 3 at 33.] Cooley stated, "Brad's really quiet so when something–basically when he's not sure of something he becomes silent. I'd assume he wasn't sure of this." [*Id.*] Cooley also testified that he lost consciousness after he saw the semi-truck coming upon them. [*Id.*] According to Cooley, when he woke up May was screaming, "and Brad, as I expected he would be, was silent, just no words out of his mouth. I could reach Brad, like he was literally laying on my legs with the seat back in between us. So I was kind of like patting his shoulder telling him that he was okay." [*Id.* at 34-35.] When asked if Hall said anything in response, Cooley answered, "No." [*Id.* at 35.]

The Plaintiffs point to Cooley's deposition testimony as evidence that Bradley Hall "was alive and calm following the accident . . . ." [R. 65 at 3] The Plaintiffs also state that Cooley

9

"was under the impression that his friends survived the accident." [*Id.*] While Cooley's deposition testimony suggests that he may have believed and hoped that Hall survived the crash, however, that belief is not supported by any evidence in the record. Unlike in *Vitale*, Hall never moved his extremities, responded to his name, made any noise, or otherwise exhibited signs of consciousness after the accident. Accordingly, there can be no award of damages for conscious pain and suffering sustained by Hall.

Citing *Deutsch v. Shein*, 597 S.W.2d 141 (Ky. 1980), the Plaintiffs also argue that damages can be recovered for the last moments of Bradley Hall's life, including the loss of control of the Taurus, the vehicle traveling into the median and then flipping over in the air, and the image of the tractor trailer heading straight for the car. [R. 65 at 4.] *Deutsch*, however, involved a claim for damages for mental suffering. 597 S.W.2d at 145. Specifically, the court held that "an action will not lie for fright, shock or metal anguish which is unaccompanied by physical contact or injury."[7] *Id.* at 145-46. A claim for emotional distress or mental suffering is not currently before the Court.

To the extent that Plaintiffs are attempting to argue that Hall is entitled to recover damages for physical pain and suffering occurring after the Taurus's impact with the median and before its impact with the tractor trailer, they cannot prevail. Assuming Hall was conscious after

---

[7]In *Steel Technologies, Inc. v. Congleton*, the court clarified that "[i]t is not enough that emotional distress be accompanied by contact–it must be *caused* by the contact. This also means that any contact must precede the emotional distress before recovery is permissible . . . ." 234 S.W.3d 920, 929 (Ky. 2007) (emphasis in original).

the vehicle hit the median,[8] the Plaintiffs have presented no evidence regarding what injuries Hall may have sustained as a result of that first impact, if any. Nor have they presented evidence of any verbal or other outward expressions of pain on the part of Hall during this time frame. Thus, there is no evidence on which the jury could reasonably find for the Plaintiff and award damages.

### III.

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. The Defendant's Motion for Partial Summary Judgment on the Plaintiffs' ESC Claims [R. 60] is **GRANTED**;

2. The Defendant's Motion for Partial Summary Judgment on Plaintiff Christopher Hall's Claim for Damages for Conscious Pain and Suffering sustained by decedent Bradley Hall [R. 62] is **GRANTED**;

3. The parties should be prepared to discuss the Defendant's Motion for Partial Summary Judgment on the Plaintiffs' Punitive Damages Claims [R. 63] at the Final Pretrial Conference; and

4. The dates for the Final Pretrial Conference and the Jury Trial remain as scheduled [*see* R. 77].

This the 22nd day of December, 2010.

---

[8]The Plaintiffs contend that "[i]t is undisputed that Bradley Hall was conscious and alert throughout the accident sequence, the rollover, and vision of the approaching tractor trailer." [R. 65 at 4.]



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge