IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | |
|---|---|
| ROBERT MAY, as Administrator for the Estate of Thomas May, and CHRISTOPHER HALL, as Administrator for the Estate of Bradley Hall and MATTHEW BENJAMIN COOLEY, </br></br>          Plaintiff,</br></br>  v.</br></br>FORD MOTOR COMPANY,</br></br>          Defendant. | Cause No. 6:09-165 |

**FORD MOTOR COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE EVIDENCE PERTAINING TO THE 2004 RECALL OF THE FRONT COIL SPRINGS ON FORD TAURUS AUTOMOBILES**

Defendant Ford Motor Company ("Ford") respectfully requests that the Court exclude all evidence pertaining to the 2004 recall of the front coil springs on 2001 (and other model year) Ford Taurus automobiles. Such evidence should be excluded pursuant to Fed. R. Evid. 402 because it is irrelevant, and therefore inadmissible. Alternatively, even if the evidence has some slight relevance, it should still be excluded pursuant to Fed. R. Evid. 403 because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

**BACKGROUND**

The 2001 Taurus model was built with conical front coil springs (so-called "pig nose" springs) that sit at an angle relative to the front tires and suspension members, and cylindrical rear coil springs that sat in a vertical position, parallel to the rear tires. After it was discovered that the front coil springs had a propensity to fracture in the "salt-belt" states and impact the front tires, thereby causing a potential loss of tire pressure and loss of control, Ford issued a recall for

the front coil springs in 2004 not nationally, but only in certain states known as "salt-belt" states. Under the recall, Ford remedied the problem by replacing the front springs and installing shields that would prevent the front coil springs from impacting the front tires in the event of a fracture. The rear coil springs, however, were not recalled. In fact, subsequent to the front springs recall, the National Highway Traffic Safety Administration ("NHTSA") investigated the rear coil springs because it received consumer complaints about fractures, but it, like Ford, was not able to identify any safety-related defects.

The Plaintiffs contend that the accident at issue here was caused by a defective rear coil spring that fractured thereby resulting in a loss of control and causing the subject accident. Ford anticipates that the Plaintiffs will try to support this theory with evidence of the 2004 recall concerning the *front* coil springs. Such evidence should be excluded as it is irrelevant to plaintiff's claims in the subject case.

## ARGUMENT

### I. Evidence pertaining to the 2004 recall is irrelevant and therefore inadmissible.

Binding Sixth Circuit precedent clearly holds that evidence of the 2004 recall of the front coil springs is irrelevant and therefore inadmissible in this case. In *Calhoun v. Honda Motor Co., Ltd.*, 738 F.2d 126 (6th Cir. 1984), the plaintiff was injured in an accident that was allegedly caused by defective brakes on his motorcycle. To support his claim, the plaintiff sought to introduce evidence that the motorcycle's manufacturer had issued a recall pertaining to the rear brake pad five months prior to the accident. *Id.* at 128. The Sixth Circuit, however, held that evidence of the recall was irrelevant and inadmissible because the plaintiff had "failed to show that the conditions described in the [recall] letter were present when the plaintiff had his accident." *Id.* at 133. In other words, evidence of a recall is irrelevant unless the defect involved

2

in the recall is the same defect that allegedly caused the accident. *See id.*; *see also Hessen for Use & Benefit of Allstate Ins. Co. v. Jaguar Cars, Inc.*, 915 F.2d 641, 649 & n.14 (11th Cir. 1990) (holding that the evidence of a recall is only admissible if the defect alleged in the plaintiff's vehicle is the same as the defect involved in the recall (citing *Calhoun*, 738 F.2d at 133; *Kane v. Ford Motor Co.*, 450 F.2d 315, 316 (3d Cir. 1971); *Jordan v. Gen. Motors Corp.*, 624 F. Supp. 72, 77 (E.D. La. 1985))).  In the instant case, the defect that allegedly caused the accident—i.e., a fractured rear coil spring—is obviously not the same defect that was involved in the 2004 recall—i.e., fractured *front* coil springs.  Therefore, under *Calhoun*, evidence of the recall must be ruled inadmissible.

The Plaintiffs may contend that the defect involved in the 2004 recall should be defined not as a defect in the Ford Taurus front coil springs, but as a defect in Ford Taurus coil springs in general.  However, this is an overly narrow definition fails to take into account the significant differences between the design and function of the front and rear coil springs in the front wheel drive Taurus.  The front and rear coil springs are entirely different parts.  They were designed and manufactured differently, with the front coil springs being conical in shape in a so-called "pig-nosed" configuration whereas the rear coil springs are cylindrical.  And, these different springs are incorporated into the Ford Taurus in starkly different methods, with the front coil springs sitting at a specified angle relative to the front tires and other suspension components which carry the engine and front-drive components, and the rear coil springs in a vertical position, parallel to the rear tires, over the non-drive componentry.  In light of these facts, it is clear that the front and rear coil springs were subjected to different forces and stresses and would not necessarily have fractured under like circumstances.  And, the fact that they were in different positions relative to the tires and suspension components also means that a fracture of the front

3

coil springs would have had a different impact and result on the front tires than would occur if there was a fracture of the rear coil springs and the effect it might have on the rear tires. Thus, it is not surprising that the front coil springs were recalled for safety reasons while the NHTSA failed to find any safety-related defects in the rear coil springs in declining to order a recall. In short, the front and rear coil springs are different parts with different designs, and different functions; and, the defect that led to the 2004 recall can only be viewed as a defect that was particular to the front coil springs, not a defect that existed in coil springs in general. As a result, the defect involved in the 2004 recall is clearly not involved in this case, which means that the 2004 recall is irrelevant and therefore inadmissible. *See* Fed. R. Evid. 402; *Calhoun*, 738 F.2d at 133.

II. **Even if evidence pertaining to the 2004 recall has some slight relevance to the issues in this case, it should still be excluded because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or waste of time.**

Assuming for the sake of argument that evidence of the 2004 recall were relevant to the issues in this case, it should still be excluded pursuant to Fed. R. Evid. 403. Given the significant differences between the front and the rear coil springs, the 2004 recall of the front coil springs can have little, if any, probative value in determining whether the Plaintiffs' automobile had a defective rear coil spring that led to their accident. This minimal probative value is substantially outweighed by the danger that this evidence will result in unfair prejudice, confusion of the issues, or misleading the jury. If the jury is allowed to hear that Ford recalled the front coil springs on 2001 Ford Taurus automobiles, the jury may conclude that the recall is direct evidence that all coil springs on Ford automobiles are defective, which would therefore lead the jury to conclude that the rear coil springs on the Plaintiffs' automobile were necessarily defective and that the accident was caused by that defect. The jury may also conclude that Ford

generally produces defective automobiles and should be punished for that. In addition, evidence of the recall would undoubtedly result in Ford introducing a substantial amount of evidence showing that the defect in the front coil springs is completely unrelated to the defect alleged by the Plaintiffs. Thus, the trial would likely devolve into a trial about the differences between the front and rear coil springs, not a trial about the real issues in this case—i.e., whether the Plaintiffs' automobile had the particular defect alleged by the Plaintiffs, and whether the accident and resultant injuries were caused by the alleged defect.

The case of *Olson v. Ford Motor Co.*, 410 F. Supp. 2d 869 (D.N.D. 2006), is particularly instructive here. In *Olson*, the plaintiff alleged that the accident at issue was caused by a defective speed control cable on a Ford Explorer. *Id.* at 871. To support this claim, the plaintiff sought to introduce evidence that Ford had issued recalls for the speed control cables on many of its models. *Id.* The court ruled that the recalls were inadmissible because the defect alleged in the plaintiff's automobile was not the same defect addressed by the recalls. *See id.* at 872-75. Alternatively, the court also ruled that even if the recalls were relevant, they were inadmissible under Fed. R. Evid. 403 because their probative value was "substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading of the jury, and by considerations of undue delay and waste of time." *Id.* at 875. In particular, the court held:

> If the Court were to allow [the plaintiff] to present evidence of the recalls, Ford would undoubtedly attempt to distinguish the recalls by offering evidence of their purpose, context, and resolution. Such presentations would lead the jury far astray of the allegations in this lawsuit-namely that the [plaintiff's] Ford Explorer was defective-and would mire the parties, the jury, and the Court in discussions of the possible defects in other Ford vehicles. More important, evidence of the recalls could mislead a jury to conclude that simply because the speed control cables in some Ford vehicles have been the subject of recalls, the [plaintiff's] Ford Explorer was likewise defective.

*Id.* The same reasoning applies to this case. Therefore, this Court should likewise find that the recall evidence proffered by the Plaintiffs is inadmissible pursuant to Fed. R. Evid. 403.

## **CONCLUSION**

For the foregoing reasons, Ford respectfully requests that this Court exclude all evidence pertaining to the 2004 recall of the front coil springs on Ford Taurus automobiles.

>FROST BROWN TODD LLC
>
>By: */s/ Kevin C. Schiferl*
>      Kevin C. Schiferl
>      Attorneys for Defendant FORD MOTOR COMPANY

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 3rd day of January, 2011, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

| | |
|---|---|
| Peter Perlman<br>Peter Perlman Law Offices<br>388 South Broadway<br>Lexington, KY 40508 | F. Thomas Conway<br>Conway & Conway<br>1800 Kentucky Home Life Building<br>239 South Fifth Street<br>Louisville, KY 40202 |
| Mark L. Morgan<br>426 South Fourth Street<br>Danville, KY 40422 | Janet Conigliaro<br>LeClair Ryan<br>Fairlane Plaza North<br>290 Town Center Drive, Fourth Floor<br>Dearborn, MI 48126 |
| Kevin M. Murphy<br>734 W. Main Street, Suite 400<br>Louisville, KY 40202 | |

      */s/ Kevin C. Schiferl*
      Kevin C. Schiferl

FROST BROWN TODD LLC
201 N. Illinois St., Suite 1900, P.O. Box 44961
Indianapolis, IN  46244-0961
317-237-3800
Fax: 317-237-3900
kschiferl@fbtlaw.com

LOULibrary LR07400.0572449   971408v1