IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | |
|---|---|
| ROBERT MAY, as Administrator for the Estate of Thomas May, and CHRISTOPHER HALL, as Administrator for the Estate of Bradley Hall and MATTHEW BENJAMIN COOLEY, | ) ) ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| FORD MOTOR COMPANY, | ) |
| Defendant. | |

Cause No. 6:09-165

**DEFENDANT FORD'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION *IN LIMINE* CONCERNING PUNITIVE DAMAGES**

Defendant Ford Motor Company ("Ford") hereby submits its Memorandum in Support of its Motion in *Limine* Concerning Punitive Damages.[1]

### I.   INTRODUCTION

Plaintiffs may seek to submit the issue of punitive damages to the jury, a circumstance that presents this Court with an important responsibility. The United States Supreme Court has emphasized that the imposition of punitive damages "pose(s) an acute danger of arbitrary deprivation of property," *Honda Motor Co., Ltd. v. Oberg*, 512 U.S. 415, 432 (1990), and that "[t]he Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 123 S. Ct. 1513, 1519-20 (2003). Therefore, it is incumbent

---

[1] Ford files its Motion In Limine and this Memorandum aware that its Motion for Summary Judgment on Punitive Damages remains pending and is not waiving or withdrawing that motion.

1

upon a court to control this power and to prevent a jury awarding punitive damages from "runn[ing] wild." *Pacific Mutual Life Insurance Co. v. Haslip*, 499 U.S. 1, 18 (1991). This duty is consistent with the fundamental constitutional mandate that "a person receive fair notice not only of the punishment but also of the severity of the penalty that a State may impose." *BMW of North Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996). This Motion seeks to invoke the procedural safeguards required by the Due Process Clause in order to ensure that any award of punitive damages against Ford in this case does not amount simply to an "arbitrary deprivation of property." *Oberg*, 512 U.S. at 432.

    First, Plaintiffs should be precluded from offering evidence of or in any way referring to Ford's financial condition or net worth in all phases of the trial. Such evidence in this case is irrelevant and unfairly prejudicial. *State Farm*, 123 S. Ct. at 1520. Ford's financial information may not be considered in deciding the amount, if any, of an award. Ky. Rev. Stat. §§ 411.186(2). Ford does not intend to introduce any evidence of any inability to pay, and its financial condition is otherwise irrelevant. Such evidence should therefore be excluded.

    Second, Plaintiffs should be precluded from referring to punitive damages in the opening statement, as such references would be unnecessarily and unavoidably prejudicial to Ford. To establish an entitlement to punitive damages, Plaintiffs must prove, by clear and convincing evidence, that Ford acted with "oppression, fraud or malice." Ky. Rev. Stat. § 411.184(2); *Oberg*, 512 U.S. at 433 (the clear and convincing standard of proof is "an important check against unwarranted imposition of punitive damages"). The "malice" requirement of Ky. Rev. Stat. 411.184(2) was determined by the Kentucky Supreme Court to be unconstitutional in *Williams v. Wilson*, 97 S.W.2d 260

(Ky. 1998). The Kentucky Supreme Court in *Williams* held that punitive damages might be allowed where gross negligence was proven, and restated the prevailing rule in the Commonwealth of Kentucky:

> **In order to justify punitive damages, there must be first a finding of failure to exercise reasonable care, and then an additional finding that this negligence was accompanied by a "wanton or reckless disregard for the lives, safety of property of others."** This bears an element not distinguishable from malice implied from the facts.

*Id.* at 263- 264. (citing from *Horton v. Union Light & Power Co.*, 690 S.W.2d 382, 388 (Ky. 1985). (emphasis added).

Plaintiffs must overcome these hurdles before the jury will be asked to consider awarding punitive damages; thus, it is inappropriate and inflammatory for Plaintiffs to refer to such a potential award initially.

Third, Plaintiffs should be precluded from using opening statements, closing arguments, or at any other point of the trial to incite the jury to "send a message" or act as the "conscience of the community." Such rhetoric is thoroughly inappropriate and unfairly prejudicial. The jury's task is to reach a verdict in *this* case, not to act as an uncontrolled arbiter of what it perceives to be social justice. *State Farm*, 123 S. Ct. at 1522-23.

Fourth, Ford moves the Court *in limine* to exclude all evidence of Ford's sales of the 2001 Ford Taurus outside Kentucky. The Supreme Court has made it clear that one state cannot constitutionally impose economic sanctions as a deterrent for conduct occurring outside that state. *See State Farm v. Campbell*, 123 S. Ct. 1513, 1522-23

(2003); *BMW*, 517 U.S. at 571-73; *White v. Ford Motor Company,* 312 F.3d 998, 1014 n.62 (9th Cir. 2002).

## II.   ARGUMENT

### A.   THIS COURT SHOULD EXCLUDE ALL REFERENCES TO FORD'S WEALTH OR FINANCIAL CONDITION FROM *ALL* PHASES OF THE TRIAL.

This Court should preclude Plaintiffs from offering any evidence relating to Ford's wealth, financial status, or aggregate profits from 2001 Ford Taurus sales. Even if the jury at some point is asked to determine whether to award punitive damages in this case and in what amount, all references to Ford's financial wealth, financial status, or aggregate profits from Ford Taurus sales should be excluded from *all* phases of the trial. Kentucky Revised Statutes section 411.186(2) excludes the financial worth of a defendant from the factors a trier of fact should consider in determining the amount of punitive damages. Such evidence is not relevant in this case. To the extent that the defendant's financial condition historically has been considered relevant to the determination of damages, it has been taken into account to *mitigate* damages where the damages awarded are excessive in relation to the defendant's ability to pay. *See, e.g., C&C Trucking Co. & Lambert v. Smith*, 612 So. 2d 1092, 1105 (Miss. 1992) (endorsing the principle that defendant should introduce evidence of wealth if he wishes to mitigate punitive damage award); *Adams v. Murakami,* 54 Cal. 3d 105, 113, 813 P.2d 1348 (Cal. 1991) (discussing common law roots of rule). Here, Ford does not anticipate introducing any evidence of any inability to pay, and its financial condition is otherwise irrelevant. Ford submits that, pursuant to constitutional mandate and in simple fairness, *all* evidence of defendant Ford's wealth must be prohibited from *all* phases of the trial in order to

4

minimize the undeniable prejudicial impact of such evidence not only prior to but also *after* any determination of any prima facie case of liability for punitive damages.

The United States Supreme Court has noted repeatedly the dangerous and prejudicial nature of evidence of a corporate defendant's financial net worth. "[T]he presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses, particularly those without strong local presences." *Oberg*, 512 U.S. at 432. In *Pacific Mutual Life Insurance Company v. Haslip,* Justice Blackmun, writing for the majority, noted that "the fact finder must be guided by more than defendant's net worth." 499 U.S. 1, 22 (1991) (finding that plaintiffs do not deserve a windfall "because they have the good fortune to have a defendant with a deep pocket.") Two years later, the same Court in *TXO Production Corporation v. Alliance Resources Corporation* agreed with the defendant that emphasizing the defendant's wealth increases the risk that prejudice against large corporations influenced the award, but declined to address the argument since TXO had not preserved the point. 509 U.S. 443, 466 (1993). As stated in *TXO*, "the emphasis on the wealth of the wrongdoer increase[s] the risk that the award may have been influenced by prejudice against large corporations, *a risk that is of special concern when the defendant is a nonresident*," as here. *Id.* at 464. Justice O'Connor, dissenting in *TXO*, noted that wealth creates a "special danger of bias," because "juries may well feel privileged to correct perceived social ills stemming from unequal wealth distribution by transferring money from 'wealthy' corporations to comparatively needier plaintiffs." *Id.* at 491-92.

5

In addition to recognizing the risk of prejudice such evidence presents, the Court has made clear the constitutional impropriety of considering the defendant's wealth or financial status in awarding punitive damages. In *BMW*, the Supreme Court did not even consider the factor of the defendant's financial worth in reviewing the punitive damages, although evidence of defendant's wealth had been presented in the trial court. *See BMW*, 517 U.S. at 574-85; *see also Pivot Point Int'l, Inc. v. Charlene Prods., Inc.*, 932 F. Supp. 220, 223 (N.D. Ill. 1996) ("[E]ven when considering punitive damages based on state law, the Supreme Court did not treat the defendant's wealth as relevant."). The Supreme Court in *State Farm* powerfully reaffirmed the central importance of the three due process guideposts and made clear that wealth evidence is neither relevant nor admissible to inflate an award beyond what can be justified under the *BMW* criteria: "The wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award." 123 S. Ct. at 1525.

Further, as discussed in detail below, evidence of Ford's *aggregate* wealth and revenues poses special dangers. Such evidence simply cannot be used to justify the imposition of a significant punitive damages award. Such an approach runs afoul of the Supreme Court's holding in *BMW* and *State Farm* that one State may not punish conduct or activities in another State. *See BMW*, 517 U.S. at 571-72; *State Farm*, 123 S. Ct. at 1522-23; *White v. Ford Motor Co.*, 312 F.3d 998, 1014 n.62 (9th Cir. 2002) (explaining that under *BMW* "we may not, as a matter of federal law, permit one state to punish . . . nationwide manufacturers for their conduct—actual or hypothetical—in other states"). Only a small portion of Ford's net revenues and aggregate wealth came from the sale of the Ford Taurus, much less from the sale of the Ford Taurus in Kentucky. Allowing

6

consideration of the company's aggregate financial condition generally permits the jury to punish Ford for conduct wholly unrelated to the sale of the Ford Taurus and wholly unconnected to consumers in Kentucky.

*State Farm* makes clear that evidence of Ford's wealth should not be introduced before the jury. In support of the punitive damages award, the *State Farm* plaintiffs cited to State Farm's wealth "to defend a departure from well-established constraints on punitive damages." *Id.* at 1525; *see also id.* at 1519 ("[t]he [lower] court also relied upon State Farm's 'massive wealth'"). The Supreme Court found that this "reference to [defendant's] assets . . . had little to do with the actual harm sustained by the Campbells" and could not be used to support the award of punitive damages. *Id.* at 1525. The Supreme Court in *State Farm* reaffirmed the due process principle that wealth evidence is neither relevant nor admissible to inflate an award beyond what can be justified under the *BMW* criteria. *Id.* This is a fundamental principle of fairness, as stated in *BMW*:

> The fact that [a defendant] is a large corporation rather than an impecunious individual does not diminish its entitlement to fair notice of the demands that the several States impose on the conduct of its business. Indeed, its status as an active participant in the national economy implicates the federal interest in preventing individual States from imposing undue burdens on interstate commerce. While each State has ample power to protect its own consumers, none may use the punitive damages deterrent as a means of imposing its regulatory policies on the entire Nation.

*BMW*, 517 U.S. at 585. Thus, admitting such evidence would exceed the constitutional limits established by the Supreme Court in *State Farm* and *BMW*.[2]

---

[2] Whether a jury is invited to consider a defendant's net worth is an entirely separate question from whether a court should examine such evidence as part of its review of a jury's award, and although Ford contends that introduction of wealth evidence before a *jury* is prejudicial and improper, such evidence can permissibly be considered by a reviewing *court*, post trial. The U.S. Supreme Court approved just such a punitive damages system in *Pacific Mutual Life Insurance Company v. Haslip*, 499 U.S. 1, 22 (1991). The Court noted favorably that under the Alabama system then under review, "[a]ny evidence of

For all these reasons, consideration of Ford's net worth or other financial condition evidence is improper, prejudicial, and unconstitutional under the circumstances presented here. The Court should therefore exclude such evidence in its entirety.

> **B.  THIS COURT SHOULD PRECLUDE PLAINTIFF FROM ASKING THE JURY TO "SEND A MESSAGE" OR ACT AS "THE CONSCIENCE OF THE COMMUNITY."**

Plaintiffs' counsel should be precluded from appealing to the jurors to consider extra-judicial factors instead of the trial record in considering liability for, or calculating the amount of, any damage award. Plaintiffs should not be able to urge during opening statement, closing argument, or at any other point of the trial, that jury members should "send a message" to Ford's boardroom or act as "conscience of the community," or to consider similar and equally improper factors in determining whether to award either compensatory or punitive damages. Such instructions are inherently prejudicial because they, on their face, urge the jury to render its verdict based on "passion and prejudice." *Oberg*, 512 U.S. at 426.

Arguments pitting the local jurors against a large, out-of-state corporation "distract the jury from its 'sworn duty to reach a fair, honest and just verdict according to the facts and evidence presented at trial.' *Whitehead v. Food Max,* 163 F.3d 265, 277 (5th Cir. 1998) (quoting *Westbrook v. General Tire & Rubber Co.*, 754 F.2d 1233, 1238-39 (5th Cir. 1985)). In *Westbrook*, the Fifth Circuit stated that such an "us-against-them

---

[the defendant's] wealth was excluded from the trial in accord with Alabama law." *Id.* at 19. As part of a searching post-trial review of the jury's verdict, however, the trial court and then the appellate court were guided by "detailed substantive standards," including, among other things, a consideration of "the financial position of the defendant." *Id.* at 21-22. The Court concluded approvingly that, as a consequence, "Alabama plaintiffs do not enjoy a windfall because they have the good fortune to have a defendant with a deep pocket." *Id.* at 22. For the same reasons, this Court should adopt a two-tiered system, excluding all evidence of Ford's wealth from the jury trial, but permitting introduction and consideration of such evidence in post-trial review of the jury's verdict, if any.

plea can have no appeal other than to prejudice by pitting 'the community' against a nonresident corporation." *Westbrook v. General Tire & Rubber Co.,* 754 F.2d 1233, 1238 (5th Cir. 1985). *See also United States v. Johnson*, 968 F.2d 768 (8th Cir. 1992) (prosecutor's inflammatory remark that jury should be a "bulwark" against drugs improperly incited jurors to be the "conscience of the community"); *United States v. Solivan*, 937 F.2d 1146, 1153 (6th Cir. 1991) (reversing conviction based on prosecutor's closing argument urging jurors to "send a message," finding such appeals "extremely prejudicial and harmful"); *New York Central R.R. Co. v. Johnson,* 279 U.S. 310, 319 (1929) (references to defendant as "eastern railroad" that had "come into this town" and to witnesses "sent on from New York" "have so often been condemned as an appeal to local and sectional prejudices as to require no comment"); *Pierce v. Platte-Clay Electric Cooperative,* 769 S.W.2d 769, 779 (Mo. 1989) (such "send a message" arguments are inappropriate). Because there is no place in this trial for such unfairly prejudicial argument, the Court should preclude Plaintiffs from attempting to engage in it.

### C. REFERENCE TO FORD'S GROSS REVENUES, AND OTHER EVIDENCE OF AND REFERENCE TO SALES OF FORD TAURUS VEHICLES OUTSIDE KENTUCKY, SHOULD BE PRECLUDED.

This Court should preclude all evidence of or references to Ford's gross revenues, net worth, or other indicia of Ford's overall financial condition. As demonstrated above, Ford's aggregate wealth and revenues are simply irrelevant to any question properly before the jury in any phase of the trial. Further, if the Court does determine that some financial evidence is admissible, Plaintiffs should not be allowed to present any evidence of sales of the 2001 Ford Taurus outside of Kentucky, complaints about these vehicles from outside of Kentucky, or profits or revenues from sales outside of Kentucky.

9

Furthermore, even if using evidence of Ford's financial condition as a basis for imposing an award of punitive damages did not contravene the Due Process Clause generally, evidence of Ford's *overall* net worth may not be used to calculate or justify any punitive damage award because it necessarily is derived from Ford's national—and indeed international—vehicle sales.

No state in the federal system can legislate except with respect to its own jurisdiction. In our federal system, "principles of state sovereignty and comity," rooted in both due process and the Commerce Clause, mandate that a state, be it Kentucky or any other state in the Union, "may not impose economic sanctions on violators of its laws with the intent of changing the tortfeasor's lawful conduct in other States." *BMW*, 517 U.S. at 572; U.S. CONST., Amend. 14; U.S. CONST. art. I § 8. "To avoid such encroachment, the economic penalties that a State . . . inflicts on those who transgress its laws, whether the penalties take the form of legislatively authorized or judicially imposed punitive damages, must be supported by the State's interest in protecting its own consumers and its own economy." 517 U.S. at 572. Accordingly, the Court in *BMW* reversed an award of punitive damages that had been based upon the auto manufacturer's national sales figures. *Id.* at 574-75.

More recently, in *State Farm v. Campbell*, 123 S. Ct. 1513 (2003), the Supreme Court declared that a trier of fact may not rely on evidence of defendant's extraterritorial conduct to support an award of punitive damages: "A jury must be instructed . . . that it may not use evidence of out-of-state conduct to punish a defendant for action that was lawful in the jurisdiction where it occurred." *Id.* at 1522-23. The Court explained that such reliance is improper because a state has no "legitimate concern in imposing punitive

10

damages to punish a defendant for unlawful acts committed outside of the State's jurisdiction." *Id.* at 1522. Because plaintiffs improperly relied on defendant's nationwide activities, the Court in *State Farm* reversed an award of punitive damages.

The Ninth Circuit recently followed *BMW* and confirmed the constitutional prohibition on the imposition of punitive damages in order to protect the interests of citizens of other States. *See White v. Ford Motor Company,* 312 F.3d 998 (9th Cir. 2002). In *White*, the plaintiffs alleged a design defect in a Ford vehicle and urged the Nevada jury to award punitive damages "that would punish Ford for its conduct toward consumers in all states." The evidence presented to the jury "focused on the number of vehicles Ford sold nationally" and "Plaintiffs' closing argument sought damages that would punish Ford for its conduct toward consumers in all states, not just Nevada." *Id.* at 1015. Indeed, "[t]he entire thrust of [the plaintiffs'] argument was that this Nevada jury now should vindicate the interests of all Ford truck owners everywhere with a verdict that would make the front page of every newspaper in the country." *Id.*

The Ninth Circuit reversed the punitive damage award, holding that under *BMW* "we may not, as a matter of federal law, permit one state to punish . . . nationwide manufacturers for their conduct-actual or hypothetical-in other states." *White*, 312 F.3d at 1014, n.62. The court recognized that "*BMW* imposed a territorial limitation on punitive damages in the interest of federalism," and stated that allowing the jury "to measure damages by [the alleged] harm to the whole country" was a "substantive error . . . of federal constitutional law." *Id.* at 1016 & n.69. Thus, the court concluded, "the jury was permitted to engage in 'a due process violation of the most basic sort' when it arrived at its punitive damages award." *Id.* at 1019 (quoting *BMW*, 517 U.S. at 573 n.19). The

11

court concluded that "under *BMW* 'a state may not impose economic sanctions on violators of its laws with the intent of changing the tortfeasors' . . . conduct in other states,' whether the extraterritorial conduct is lawful or not." *Id.* at 1018 (ellipses in original).

Admission of any evidence touching upon factors not strictly limited to the State of Kentucky will taint any award and ultimately require reversal. Only a small portion of Ford's net revenue comes from the sale of the 2001 Ford Taurus, much less from the sale of the 2001 Ford Taurus in Kentucky. Yet, introduction of evidence of Ford's aggregate earnings necessarily would invite the jury to punish Ford for conduct wholly unrelated to the sale of the 2001 Ford Taurus and wholly unconnected to consumers in Kentucky. Any such jury award would exceed the ban on extraterritorial punishment established by *BMW* and would violate both the Commerce and Due Process Clauses: "While each State has ample power to protect its own consumers, none may use the punitive damages deterrent as a means of imposing its regulatory policies on the entire Nation." *Id*. at 585. Allowing consideration of evidence of sales, customer complaints, or accidents outside of the state would run afoul of this prohibition by allowing the jury to punish Ford for conduct beyond its borders.

As the authorities discussed above clearly demonstrate, any attempt by Plaintiffs to introduce any evidence of out-of-state conduct by Ford that has no impact on Kentucky residents, violates both Ford's due process rights and general principles of federalism. *See State Farm*, 123 S. Ct. at 1523 ("A basic principle of federalism is that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders, and each State alone can determine what measure of punishment, *if*

*any*, to impose on a defendant who acts within its jurisdiction.") (emphasis added). Therefore, to the extent this Court admits any evidence regarding Ford's sales or profits, such evidence must be limited to the sales occurring in the Commonwealth of Kentucky.

### D. THIS COURT SHOULD PRECLUDE PLAINTIFFS FROM REFERRING TO PUNITIVE DAMAGES IN OPENING STATEMENTS.

Ford also seeks an order excluding any premature mention of punitive damages, specifically in Plaintiffs' opening statement. Punitive damages are available only if plaintiff has established, "by clear and convincing evidence, that the defendant . . . acted . . . with oppression, fraud, or malice." Ky. Rev. Stat. § 411.184(2). *See also Oberg*, 512 U.S. at 433 (the clear and convincing standard of proof is "an important check against unwarranted imposition of punitive damages"). In addition, under Kentucky law, plaintiffs must show that defendant's conduct was intentional, deliberate, and *outrageous* in order to justify an award of punitive damages. *Horton v. Union Light & Power Co.*, 690 S.W.2d 382, 389 (Ky. 1985) ("'Punitive damages *may be awarded for conduct that is outrageous*, because of the defendant's evil motive *or* his reckless indifference to the rights of others.'") (emphasis in original); *Banks v. Fritsch*, 39 S.W.3d 474, 482 (Ky. App. Ct. 2001) (citing *Hensley v. Paul Miller Ford, Inc.*, 508 S.W.2d 759, 762 (Ky. 1974) for the proposition that punitive damages are "'permitted'" "'where the defendant's wrongdoing has been intentional and deliberate, and has the character of outrage'"); *see also Miller's Bottled Gas, Inc. v. Borg-Warner Corp.*, 56 F.3d 726, 734 (6th Cir. 1995) (applying Kentucky law) ("[A] defendant's intent to injure the plaintiff is insufficient. The key, rather, is whether the defendant's "misconduct 'has the character of outrage.'"). Proof that defendant committed an intentional tort, without more, does not establish an entitlement to punitive damages; rather, plaintiff must prove that defendant is

13

guilty of "conscious wrongdoing." *Fowler v. Mantooth*, 683 S.W.2d 250, 252 (Ky. 1984) ("The mere fact that the act is intentional and a tort does not justify punitive damages absent this additional element of implied malice, meaning conscious wrongdoing.").

Claiming punitive damages in opening argument, therefore, before Plaintiffs establish their right to submit the issue to the jury, would be unduly and unnecessarily prejudicial. In order to prevent the prejudice created by referring prematurely to any unmeritorious claim for punitive damages, Plaintiffs should be precluded from mentioning the issue in their opening statement. *See, e.g., AmSouth Bank v. Gupta*, 2002 Miss. Lexis 357, *42-43 (stating that "section 11-1-65 requires that the subject of punitive damages not even be brought into the jury's mind as it deliberates upon compensatory damages"); *Fisher v. McIlroy,* 739 S.W.2d 577 (Mo. App. 1987) (injecting issue of punitive damages into argument when issue not supported by evidence was prejudicial error). Accordingly, the Court should preclude Plaintiffs from making any reference to punitive damages in their opening statement.

## CONCLUSION

For all the reasons stated above, Ford respectfully requests the Court grant the requested relief.

FROST BROWN TODD LLC

By: */s/ Kevin C. Schiferl*
    Kevin C. Schiferl
    Attorneys for Defendant FORD MOTOR COMPANY

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 3rd day of January, 2011, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Peter Perlman  
Peter Perlman Law Offices  
388 South Broadway  
Lexington, KY 40508  

F. Thomas Conway  
Conway & Conway  
1800 Kentucky Home Life Building  
239 South Fifth Street  
Louisville, KY 40202  

Mark L. Morgan  
426 South Fourth Street  
Danville, KY 40422  

Janet Conigliaro  
LeClair Ryan  
Fairlane Plaza North  
290 Town Center Drive, Fourth Floor  
Dearborn, MI 48126  

Kevin M. Murphy  
734 W. Main Street, Suite 400  
Louisville, KY 40202  

    */s/ Kevin C. Schiferl*  
    Kevin C. Schiferl

FROST BROWN TODD LLC  
201 N. Illinois St., Suite 1900, P.O. Box 44961  
Indianapolis, IN  46244-0961  
317-237-3800  
Fax: 317-237-3900  
kschiferl@fbtlaw.com  

INDLibrary2 LR07400.0572449   1007248v1