UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| ROBERT MAY, et al., | ) |
|     Plaintiffs, | ) Criminal No. 09-165-GFVT |
| V. | ) |
| FORD MOTOR COMPANY, | ) **MEMORANDUM OPINION** |
|     Defendant. | ) **& ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court upon the Plaintiffs' objection to the testimony of Ford expert Donald F. Tandy, Jr.[1] [R. 125 at 1-3.] For the reasons set forth below, this objection is overruled.

This action arises out of a motor vehicle accident that occurred on November 9, 2008, in Rockcastle County, Kentucky. [R. 1.] On that date, Thomas May was driving a 2001 Ford Taurus northbound on Interstate Highway 75. [R. 1.] Bradley Hall and Ben Matthew Cooley were passengers in the Taurus. [R. 1.] The three young men were college students returning from a UK Baptist Campus Ministries Fall Retreat at Laurel Lake. [R. 65 at 1.]

For reasons that are in dispute, May lost control of the vehicle, and it entered the median. [R. 62, Attach. 3 at 30.] The vehicle hit the bottom of the median, causing it to flip over. [*Id.* at 30-31.] The Taurus landed on its tires in the southbound lanes, perpendicular to traffic, where it

---

[1] Initially, there was another expert witness issue in this case. Specifically, Ford filed a motion to exclude certain opinions of Plaintiff Ben Matthew Cooley's experts Sharon Brown Lane and William Baldwin, Ph.D. [R. 99.] In light of the settlement reached between Cooley and Ford, however, that motion is now moot, and it will be denied as moot by separate order.

was struck by an on-coming tractor trailer. [*Id.* at 31; R. 1.] May and Hall suffered fatal injuries as a result of the crash. [R. 1.]

The Plaintiffs allege that the Taurus was in a defective condition unreasonably dangerous to users, thereby causing the accident and their injuries. [R. 1.] Specifically, based on other motions filed in this case and the parties' arguments at the January 10 and February 2 pretrial conferences, it appears that the Plaintiffs' main theory of liability is that the 2001 Taurus's rear coil springs were defective, and that the right rear coil spring on May's vehicle failed, causing him to lose control and enter the median. The Plaintiffs allege that Ford negligently designed, manufactured, marketed, and distributed the Taurus, and that Ford's negligence included a failure to warn of the known and foreseeable hazards of the Taurus, both before and after the sale of the subject vehicle. [R. 1.] The Plaintiffs further allege that Ford is strictly liable as the designer manufacturer, marketer, and seller of the Taurus. [R. 1.] The Plaintiffs seek damages. [R. 1.]

Federal Rule of Evidence 702 sets forth the guidelines by which the admissibility of expert testimony should be analyzed:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Essentially, Rule 702 sets forth a two part test for admitting expert testimony: (1) Is the expert qualified and the testimony reliable? and (2) Is the evidence relevant and helpful to the trier of fact? *See also United States v. Jones*, 107 F.3d 1147, 1156 (6th Cir. 1997). The decision regarding expert testimony admissibility ultimately lies in a fact-intensive analysis that is

particular to each circumstance and subject to the discretion of the trial court. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149-51 (1999). The burden of establishing reliability does, however, rest with the proponent of the testimony. *See Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001).

In determining whether the proposed testimony is reliable, the Court must first assess the expert's qualifications. Here, however, it does not appear that the expert's qualifications are in dispute. Further, according to Donald Tandy's Affidavit[2] [R. 153, Attach. 1], he has worked as an automotive engineer for more than twenty-three years, has formal training as an engineer, and is a registered professional engineer in the State of Texas. Additionally, he has a Bachelor of Science and a Master of Science in Mechanical Engineering from Ohio State University, and on his resume he lists "failure analysis and accident reconstruction" as an area of specialized professional competence. [*Id.* at 4.]

Next, the Court must determine whether the methodology utilized by the expert is reliable. This involves the district court acting as a "gatekeeper" to determine whether the principles and methodology underlying the expert's testimony are valid.[3] *See Pride v. BIC Corp.*,

---

[2]It appears that a page is missing from the Affidavit of Tandy filed in the record. The Court finds, however, that it has sufficient information to rule on the Plaintiffs' objection without the omitted page.

[3]In *Daubert*, the Supreme Court stated that, in making this determination, the lower courts should consider such factors as whether the theory or technique (1) can and has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error; and (4) has been generally accepted by the scientific community. *Daubert*, 509 U.S. at 593-94. The *Daubert* Court explained that these factors do not constitute a definitive checklist. *Id.* at 593. Rather, "[t]he inquiry envisioned by Rule 702 is...a flexible one." *Id.* at 594. Indeed, in *Kumho Tire*, the Supreme Court concluded that, while "a trial court *may* consider one or more of the specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability,...*Daubert*'s list of specific factors neither necessarily nor exclusively

218 F.3d 566, 577 (6th Cir. 2000); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Of course, it is important to note that this Court may only determine whether the principles and methodology underlying the testimony itself are valid, and it may not exclude testimony based on a valid methodology. *Id.* at 596. The *weight* of otherwise reliable testimony is a question for the jury, and any doubts the Court has about credibility should be left to the jury's discretion. *See Greenwell v. Boatwright*, 184 F.3d 492 (6th Cir. 1999).

In their written objection to Tandy's testimony, the Plaintiffs summarily argue that a review of Tandy's testimony reveals that he applies *no* methodology to his opinions. [R. 125 at 2.] They also argue that Tandy's opinions largely relate to electronic stability control (ESC) systems, and are therefore irrelevant as the Court earlier granted Ford summary judgment on the Plaintiffs' claim that the 2001 Taurus was defective due to its lack of an ESC system. [*See* R. 83.] According to the Plaintiffs, Tandy's methodology and opinions flow as follows: (1) ESC would not have prevented the accident; (2) Mr. Tandy can drive a Taurus with a broken coil spring; and (3) Tom May drove off the road. [R. 125 at 2 to 3.] The Plaintiffs contend that with the exclusion of ESC as an issue in this case, it is difficult to discern what evidence Mr. Tandy

---

applies to all experts or in every case." *Kumho Tire Co.*, 526 U.S. at 141. Specifically, the Sixth Circuit has recognized that the particular "factors utilized in *Daubert* may be of limited utility in the context of non-scientific expert testimony." *First Tennessee Bank National Ass'n v. Barreto*, 268 F.3d 319, 334 (6th Cir. 2001); *see also Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 407 (6th Cir. 2006).
     Here, the Plaintiffs did not analyze or challenge Tandy's opinions in terms of the *Daubert* factors. The Court assumes this is because, although Tandy examined the subject Taurus and performed tests using an exemplar Taurus, his tests and his opinions relate to the specific accident at issue in this case. Further, he qualifies as an expert more on the basis of technical and "specialized knowledge" [*see* R. 125]. Thus, the *Daubert* factors are less useful in evaluating his testimony.

can offer that would assist the trier of fact. [*Id.* at 3.]

In response, Ford argues that the Plaintiffs' claim that Mr. Tandy applies no methodology to his opinions simply is not true. [R. 153 at 2.] Ford states that Tandy conducted an examination of the subject accident vehicle in this case and reviewed voluminous materials related to the case, including the accident facts and design and development documents concerning the Ford Taurus and its suspension system. [*Id.* at 3.] Ford further states that Tandy conducted vehicle testing using an exemplar Taurus and the tests utilized by the automotive industry to analyze steering, handling, and stability characteristics of vehicles sold to the motoring public. [*Id.*] To rebut the Plaintiffs' contention that Tandy's opinions primarily relate to the excluded ESC claim, Ford argues that a plain reading of Tandy's report shows that his primary opinions focus on the issue of whether a fracture of the Taurus's right rear coil spring would have resulted in loss of control and led to the subject accident. [*Id.* at 4.]

After reviewing Tandy's report, the Court agrees with Ford that his opinions do not merely relate to the ESC claim.[4]  Additionally, the Court finds that the Plaintiffs' claim that *no* methodology underlies Tandy's opinions is incorrect. Tandy performed several tests on an exemplar Taurus to evaluate its steering and handling capabilities. [*See* R. 153, Attach. 1 at 8.] He performed these tests both with all suspension components intact and after cutting the right rear coil spring so that it fractured similar to the spring at issue in this case. [*Id.*] It is Tandy's opinion that his "tests confirm that the Taurus with an intact spring or a broken spring remains safe and stable at various speeds and at lateral accelerations exceeding 0.7 g's which provides a

---

[4]Of course, the Court expects that Ford will follow the Court's prior rulings in eliciting Tandy's testimony at trial.

high margin of safety in all types of driving situations." [R. 153, Attach. 1 at 9.] It is further Tandy's opinion based on the reentry path of May's vehicle that the accident at issue in this case represents a typical rollover crash. [R. 153, Attach. 1 at 6.] The Court finds that sufficient principles and methodology underlie Tandy's testimony to render it admissible.

At the pretrial conference held February 2, 2011, the Plaintiffs stated that they believe Tandy's methodology is problematic because he intentionally fractured the right rear coil spring of the exemplar vehicle in performing his tests, which does not accurately simulate what the Plaintiffs allege happened during the subject accident. This issue, however, goes to the weight of Tandy's testimony, not its admissibility.

Finally, the Court must determine whether the proposed testimony is relevant. *See* Fed. R. Evid. 402 and 403. In doing so, the Court must assess whether it will help the jury to understand the evidence or determine a fact in issue. *Daubert*, 509 U.S. at 591. Under this standard, Tandy's testimony is relevant. One of the major issues in this case is whether the fracturing of a rear coil spring would cause a driver to lose control of his or her vehicle, and Tandy's testimony bears directly on that issue.

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** that the Plaintiffs' objections to the testimony of defense expert Donald F. Tandy, Jr. [R. 125], are **OVERRULED**, and Mr. Tandy's testimony is **ADMISSIBLE** at trial.

This the 3rd day of February, 2011.



**Signed By:**
*Gregory F. Van Tatenhove*
**United States District Judge**